UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

IN RE

LLOYD ANTHONY HULS and
SHEILA LORRAINE HULS

Debtors

Chapter 12
No. 10-81533

---

CHAPTER 12 PLAN OF REORGANIZATION
[11 U.S.C. §§1221 *et seq.*]

## 1.00. INTRODUCTION.

1.    On May 10, 2010 ("date of filing"), debtors filed their voluntary petition for reorganization under Chapter 12 of the United States Bankruptcy Code (11 U.S.C. §§1201 et seq.).

2.    This plan of reorganization is the debtors' proposal to pay the debts they owed on the date the petition was filed.

3.    The following schedules are attached to this plan and are an integral part hereof:

| Schedule No. | Description |
|---|---|
| PS | Plan Summary |
| CF | Cash Flow (Projected) |
| LA | Combined Pro Forma Balance Sheet After Reorganization And Analysis Of Dividend If Case Converted To Liquidation Under Chapter 7 |
| TR | Summary Of Prior Tax Returns |
| OS | Operational Summary |

4.    The debtors submit all or such portion of their future earnings or other future income to the supervision and control of the trustee as is necessary for the execution of the plan. 11 U.S.C. §1222(a)(1).

5.    The plan need not receive creditor approval (11 U.S.C. §1225), but the court must find that the plan has been proposed in good faith and that the plan complies with the other requirements of §1225. If this plan is not accepted and approved, then the court may--

a.    Dismiss the case; or

       b.      Allow the debtors to propose another plan.

6.     As the debtors are farmers, the case cannot be converted to liquidation under Chapter 7, except for fraud in connection with the case. 11 U.S.C. §1208(d).

7.     The debtors believe that the plan will produce more for creditors than they would receive if the case was liquidated under Chapter 7 (straight bankruptcy).

## 2.00. DEFINITIONS.

1.     Definitions:

**Balloon Payment.** "Balloon payment" means that the remaining balance due a creditor shall be paid (or refinanced) on the specified balloon payment date.

**Base Dividend.** "Base dividend" means that the debtors will pay a fixed amount to a particular class of creditors in full of the debtors' aggregate obligations to that class, without deficiency. The payment will then be divided, pro rata, among the creditors in that class whose claims are duly allowed. The amount which a creditor receives is determined by the following formula:

$$BPD = \frac{AC}{TC} \times BD$$

Where:

AC =   The amount of the individual creditor's allowed claim.

TC =   The aggregate (or total) allowed claims in the base class.

BD =   The aggregate Base Plan Dividend to be paid to the class as a whole.

BPD=  The amount which the individual creditor will receive as his Base Plan Dividend.

**Claim.** "Claim" means a duly-scheduled or timely-filed claim which is allowed and ordered paid by the court.

**Court.** "Court" means the United States Bankruptcy Court for the Central District of Illinois.

**Creditors.** "Creditors" mean all creditors of the debtors holding claims for secured or unsecured debts, liabilities, demands or claims of any character whatsoever.

**Effective Date.** "Effective date" means that date on which an order confirming the plan becomes final and nonappealable. Generally, if the order is not appealed, the Effective Date is the 15th day following entry of an order confirming the plan. Rule 8002(a), Federal Rules of Bankruptcy Procedure.

**Impaired Claim.** "Impaired claim" means a claim or equity interest which is modified in some respect by the terms of the order of confirmation and which has not been otherwise consensually modified by agreement of the debtors and the creditor.

**Manner Of Payment - By Trustee.** "Manner of payment - by trustee" means payments by the debtors or others to the Chapter 12 trustee who, in turn, shall disburse them pursuant to the plan. Payments by the trustee are subject to trustee's fees. Payments made by the trustee are sometimes referred to as "payments inside the plan".

**Manner Of Payment - Direct By Debtor.** "Manner of payment - direct by debtor" means payments made directly by the debtors to creditors pursuant to the plan which payments bypass the Chapter 12 trustee. Payments direct by the debtors are not subject to trustee's fees. Direct payments by the debtors which bypass the trustee are sometimes referred to as "payments outside the plan".

**Plan.** "Plan" means this plan of reorganization in its present form or as it may be amended or supplemented.

**Post-Petition Debts.** "Post-petition debts" are debts which were incurred on and after the date of filing.

**Pre-Petition Debts.** "Pre-petition debts" are debts which were incurred prior to the date of filing.

**Secured Creditors.** "Secured creditors" mean all creditors who hold a lien, security interest, or other encumbrance which has been properly perfected as required by law with respect to property owned by the debtor.

**Tense; Gender.** The singular tense includes the plural; the masculine gender includes the feminine and the neuter.

**Trustee.** "Trustee" means the Chapter 12 trustee appointed pursuant to 11 U.S.C. §1202.

**Unimpaired Claim.** "Unimpaired claim" means is a claim which will be paid, after confirmation, in accordance with the tenor of the creditor's contract with the debtor, or a claim which has been consensually modified by agreement of the parties subsequent to the Chapter 12 petition but prior to the entry of an order of confirmation.

## 3.00. CLASSIFICATION OF CLAIMS.

1.    All claims shall be fixed and determined as of the date of filing.

2.    Secured claims as finally allowed and ordered paid by the court, shall be treated as secured only to the extent that such claims are not greater than the value of the debtors' assets which the court finds are valid security for such claims.  See 11 U.S.C. §506 and Bankruptcy Rule 3012.

3.    The classification of claims and their treatment are combined.

## 4.00. INTEREST; PENALTIES; ACCELERATION.

1.    If the agreement between the parties so provides, a creditor may accrue interest on his claim (at the rate provided in the agreement) through the date of filing.

2.    Unless otherwise specifically provided in this plan:

   a.    No creditor shall accrue interest on his claim after the date of filing.

   b.    Interest on the allowed secured component of a claim shall begin to accrue on the date of confirmation of this plan.

3.    Each creditor waives:

   a.    Default interest.

   b.    Penalties.

   c.    The right to accelerate payment unless the debtors default in their payments under the plan after the plan's effective date.

   d.    Contractual attorney's fees unless:

      1.    The contract so provides; and

      2.    The creditor is oversecured.

4.    If the debtors are required to pay a creditor's attorney's fee pursuant to §4.03(d):

   a.    The amount of the fee shall be reasonable.

   b.    If the parties cannot agree on the amount of the fee, it shall be determined by the court.

   c.    The fee shall be paid in three equal annual payments, without interest, commencing on the first day of the month following the plan's Effective Date.

## 5.00. EXPENSES OF ADMINISTRATION; PRIORITY CLAIMS ("P" Class Claims).

| "P" CLASS CLAIMS [Priority Claims] |
| --- |
| Class "P" creditors are creditors entitled to priority under the Bankruptcy Code.<br><br>Priority claims include costs of administration, eligible employees' claims, and federal, state, and local taxes which are entitled to priority. |

1.    The "P" class claims are classified and shall be paid as follows:

Class P1:  Costs and Expenses of Administration
Impaired?  No

Except as otherwise specifically provided in this plan, within 60 days following the plan's Effective Date, debtors shall pay the costs and expenses of administration as defined by §§507(a)(1) and 503(b).

Class P2:  Post-Petition Operating Expenses
Impaired?  No

Debtors shall pay their post-petition operating expenses in accordance with the terms of the agreements made with their post-petition creditors.

Class P3:  Attorney's Fees and Expenses
Impaired?  No

The attorney's fees and costs of Barry M. Barash of Barash & Everett, LLC, are subject to court approval.  11 U.S.C. §§327, 328, and 330.

Class P4:  Tax Claims of the United States of America, acting through Internal Revenue Service
Impaired?    Yes

| | |
| --- | --- |
| Amt. of allowed claim: | $13,336 |
| Annual payment: | $3,166 |
| Interest rate: | 6% |
| Interest accrues from: | N/A |
| Amortization: | 5 years |
| Date of next payment: | February 1, 2011 |
| Manner of payment: | Through trustee |

Class P5:  Tax Claims of States and Municipalities
(except real estate taxes)

Illinois Department of Revenue
Impaired?  Yes

| | |
|---|---|
| Amt. of allowed claim: | $875 |
| Annual payment: | $208 |
| Interest rate: | 6% |
| Interest accrues from: | N/A |
| Amortization: | 5 years |
| Date of next payment: | February 1, 2011 |
| Manner of payment: | Through trustee |

Class P6:  Real Estate Taxes (Retained Land)
Impaired?  No

Class P6 creditors are taxing bodies which have assessed general real estate taxes on tracts of land which the debtors will retain under the plan.

The Class P6 claims shall be paid by the debtors in accordance with the laws of the taxing entities.

2.      Payments made to any taxing body shall be applied by the recipient first to the "trust fund" portion of the debtors' tax liability.  26 U.S.C. §§3402; 7501(a); 6672. United States v Energy Resources Co., Inc., 495 US 545, 109 L Ed 2d 580, 110 S Ct 2139 (1990).

## 6.00.  CLAIMS SECURED BY FIRST LIENS ON REAL ESTATE ("R" Class Claims).

| "R" CLASS CLAIMS<br>[First Liens Secured By Real Estate] |
|---|
| Class "R" creditors are creditors who are secured by first mortgages, contracts for deed or other senior liens secured by real estate. |

1.      The "R" class claims are classified and shall be paid as follows:

Class R1:  Lloyd and Colleen Huls
First mortgage on Tract 1.
Impaired?  Yes

| | |
|---|---|
| Amt. of allowed claim: | $52,000 |
| Annual payment: | $4,068 |
| Interest rate: | 6% |
| Interest accrues from: | Date of confirmation |
| Amortization: | 25 years |
| Date of next payment: | February 1, 2011 |
| Manner of payment: | First five payments through trustee, remainder direct by debtor |

Class R2:  FSA
First mortgage on Tract 2.
Impaired?  Yes

| | |
|---|---|
| Amt. of allowed claim: | $194,130 |
| Annual payment: | $12,131 |
| Interest rate: | 5% |
| Interest accrues from: | Date of confirmation |
| Amortization: | 33 years |
| Date of next payment: | February 1, 2011 |
| Manner of payment: | First five payments through trustee, remainder direct by debtor |

Class R3:  Marine Bank & Trust
First mortgage on Tract 3.
Impaired?  Yes

| | |
|---|---|
| Amt. of allowed claim: | $152,320 |
| Annual payment: | $11,915 |
| Interest rate: | 6% |
| Interest accrues from: | Date of confirmation |
| Amortization: | 25 years |
| Date of next payment: | February 1, 2011 |
| Manner of payment: | First five payments through trustee, remainder direct by debtor |

## 7.00.  CASH COLLATERAL CLAIMS ("CC" Class Claims).

| "CC" CLASS CLAIMS<br>[Claims Secured By Cash Collateral] |
|---|
| Class "CC" creditors are creditors who have security interests in "cash collateral" (stored and growing crops, livestock, and the like) as defined by §363(a) of the Bankruptcy Code.  Class CC creditors also include creditors secured by the cash value of life insurance, pledges of certificates of deposit or warehouse receipts and similar items.  Class CC creditors are unimpaired and will be paid 100% as the collateral is sold. |

    1.    The "CC" class claims are classified and shall be paid as follows:

Class CC1:  Marine Bank & Trust
Security interest in milk proceeds and accounts receivable.  Cash collateral.
Impaired?  No

Class CC2:  Marine Bank & Trust
Security interest in feedstuffs.  Cash collateral.
Impaired?  No

The debtors will pay each claim in accordance with the tenor of its respective contract.  All CC class claims will be paid direct by debtors.

## 8.00.  CLAIMS SECURED BY LIENS ON PERSONAL PROPERTY ("UCC" Class Claims).

| "UCC" CLASS CLAIMS |
| :---: |
| [Claims Secured By Security Interests In Personal Property] |
| Class "UCC" creditors are creditors who are secured by senior or junior security interests in personal property. |

1.    The "UCC" class claims are classified and shall be paid as follows:

Class UCC1:  Marine Bank & Trust
Security interest in livestock.
Impaired?      Yes

Amt. of allowed claim:        $74,675

The livestock which secures the Class UCC1 claim shall be sold and the net proceeds remitted to the bank.

Class UCC2:  CNH Capital America
Security interest in Gehl mower conditioner.
Impaired?      Yes

Amt. of allowed claim:        $7,059

The collateral which secures the Class UCC2 claim shall be returned to creditor in full of the obligation without deficiency.

Class UCC3:  Marine Bank & Trust
Security interest in farm machinery and equipment (to be retained).
Impaired?      Yes

| | |
| :--- | :--- |
| Amt. of allowed claim: | $25,700 |
| Annual payment: | $6,101 |
| Interest rate: | 6% |
| Interest accrues from: | Date of confirmation |
| Amortization: | 5 years |
| Date of next payment: | February 1, 2011 |
| Manner of payment: | Through trustee |

Class UCC4:  Marine Bank & Trust
Security interest in farm machinery and equipment (to be sold).
Impaired?      Yes

Amt. of allowed claim:        $10,150

The collateral which secures the Class UCC4 claim shall be sold and the net proceeds remitted to the bank.

## 9.00. STATUTORY LANDLORDS' LIENS ("ST" Class Claims).

| "ST" CLASS CLAIMS<br>[Statutory Liens] |
| --- |
| Class "ST" creditors are creditors who are secured by statutory landlords' liens, or by other statutory liens. Class ST creditors are unimpaired and will be paid, either by the debtors or from the proceeds of the current crop, provided that such ST class creditors take the steps necessary under state law to perfect and foreclose their liens. |

1.     The "ST" class claims are classified and shall be treated as follows:

Class ST1: Fink Trust
Statutory landlord's lien on 2010 growing crop.
Impaired?     No

Class ST2: Deuall Sides
Statutory landlord's lien on 2010 growing crop.
Impaired?     No

Class ST3: Jeff & Ophelia Foreman
Statutory landlord's lien on 2010 growing crop.
Impaired?     No

Class ST4: Colleen Huls
Statutory landlord's lien on 2010 growing crop.
Impaired?     No

## 10.00. UNSECURED CLAIMS ("U" Class Claims).

| "U" CLASS CLAIMS<br>[Claims Of Unsecured Creditors] |
| --- |
| Class "U" creditors include all of the unsecured creditors, the unsecured or undersecured components of secured creditors liens, and contingent unsecured claims. |

1.     The "U" class claims are classified and shall be paid as follows:

Class U1:  Unsecured Claims
All unsecured claims (except contingent claims).
Impaired? Yes

As a dividend to the Class U1 unsecured creditors, the debtors shall pay to the trustee the sum of $20,000 at the rate of $5,000 per year for four years, on or before February 1 of each year, commencing February 1, 2012. The trustee shall distribute this amount to the unsecured creditors pro rata.

Payments to Class U1 claimants shall be in full settlement of all unsecured claims. A schedule of estimated payments to the Class U1 creditors is an

exhibit to this plan. As the amounts of the claims are in part estimated, the net payable to a particular unsecured creditor may vary, depending upon the total aggregate claims.

Class U2:  Contingent Unsecured Claims
Impaired?  Yes

Unless a Class U2 creditor has his claim properly allowed as a Class U1 claim, such creditor shall receive nothing under this plan, and shall waive claims against the debtors. Each Class U2 creditor shall move to have his claim allowed within ten days following confirmation or such claim shall be forever barred.

## 11.00.  CHAPTER 12 TRUSTEE'S FEE.

1.      The Chapter 12 trustee's fee in this case is fixed at 5% of the amount actually distributed to creditors by the trustee, to be paid concurrently with the payments to creditors as provided in the plan. In addition to the payments to creditors provided for in this plan, the debtors shall pay to the trustee his statutory fee.

## 12.00.  GENERAL PROVISIONS.

1.      **Retention Of Jurisdiction.** The court shall retain jurisdiction of this case until all claims have been paid in full.

2.      **Property Vests In Debtors.** The confirmation of this plan vests all of the property of the estate in the debtors free and clear of any claim or interest of any creditor except as otherwise provided in the plan or in the order confirming the plan. 11 U.S.C. §§1227(b) and (c).

3.      **Post-Confirmation Financing.** Debtors may obtain post-confirmation financing secured by assets which have revested in the debtors without further order of court. Debtors may also use revested property to the extent it is not encumbered by this plan or order of confirmation to secure post-confirmation credit. 11 U.S.C. §1227. Without limitation of the foregoing, debtors may, without further order of court:

a.      Obtain loans from United States of America, acting through United States Department of Agriculture, Commodity Credit Corporation, secured by grain.

b.      Obtain loans secured by post-petition crops.

Debtors shall give the Chapter 12 Trustee advance written or verbal notice of their intention to borrow pursuant to this section.

4.      **USDA Executory Contracts.** Debtors affirm all executory contracts (whether pre-petition or post-petition) between themselves (or either of them) and the United States of America, acting through the United States Department of Agriculture.

5.      **Full Settlement.** The payments made and received under this plan shall be in full settlement and compromise of the debtors' obligations. 11 U.S.C. §1227.

6.      **Prepayment.** The debtors may prepay all or any portion of the reorganized debt at any time, without penalty.

7.    **Discharge.**  After the debtors successfully complete the plan (except for secured obligations which are paid over a longer period than unsecured obligations), they shall be discharged from any further obligations to any of their creditors.  11 U.S.C. §1228.

8.    **Security Interest Retained.**  Until the allowed secured claim to a secured creditor has been paid in full, that creditor shall retain its security interest in the collateral pursuant to the terms of its mortgage or other security agreement.

9.    **Stale Liens.**  On confirmation, all stale liens indexed against the debtors or property of the estate shall be released by the secured party.  "Liens" include mortgages, statutory liens (including mechanic's and judgment liens), security interests and financing statements.  A "stale lien" is any lien which, upon confirmation of the plan does not immediately thereafter secure property of the reorganized entity.  A pre-petition lien which in fact secures post-confirmation property of the reorganized entity is not affected except as provided in the plan (including amendments), and the order of confirmation.

10.    **Post-Confirmation Jurisdiction.**  Pursuant to §502, the court shall retain post-confirmation jurisdiction to consider and to reconsider all claims.  The payments to creditors under the plan are estimated and are based upon the amount believed due.  Until confirmation and until all claims have been allowed, exact amounts cannot be determined.  The allowed secured claim of any junior secured creditor shall be recomputed and the payments adjusted accordingly (based upon the interest rate and amortization set forth in the plan, the amendments thereto or as agreed) after the amount of all senior liens and encumbrances have been determined and deducted from the gross value of the junior creditor's collateral.

11.    **First Payment; Pushback.**  In general, the plan calls for the first payment to creditors to occur on February 1, 2011.  In the event that the plan is not confirmed by that date, the first payment to creditors shall be thirty days following confirmation.

**13.00.  DATE AND SIGNATURES.**

1.    The date of this plan is August 6, 2010.

/s/ Lloyd A. Huls _____
Lloyd A. Huls, Debtor

/s/ Sheila L. Huls _____
Sheila L. Huls, Debtor

Barry M. Barash (ARDC Reg. #108928) of
Barash & Everett, LLC
Debtors' Attorney
256 South Soangetaha Road
Galesburg, IL 61401
Telephone: 309/341-6010
Fax:        309/341-1945
E-mail: barashb@barashlaw.com

[Chapter 12 Plan: V1.0: 8-6-10]                                    11

09-Aug-10
09:38 AM

# SCHEDULE PS: PLAN SUMMARY
## Name: Lloyd A. Huls & Sheila L. Huls

| Creditor | Class | Collateral/Comments | Total Debt | Collateral Value | Net Equity | Unsecured Component | Payment Period | Payment | Int. Rate | Amort (Yrs.) | Date of Next Print |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lloyd & Colleen Huls | R1 | Tract 1 - residence @ Carthage, IL | $52,000 | $52,000 | | | Annual | $4,068 | 6.00% | 25 | 01-Feb-11 |
| FSA | R2 | Tract 2 - 126 ac. & milking parlor | $194,130 | $226,800 | $32,670 | | Annual | $12,131 | 5.00% | 33 | 01-Feb-11 |
| Morene Bank & Trust | R3 | Tract 3 - Palmer Place - 47.6 ac. | $152,320 | $152,320 | | | Annual | $11,915 | 6.00% | 25 | 01-Feb-11 |
| Morene Bank & Trust | CC1 | Milk proceeds & accounts receivable | $8,000 | $8,000 | | | Cash collateral. | | | | |
| Morene Bank & Trust | CC2 | Feedstuffs | $6,425 | $6,425 | | | Cash collateral. | | | | |
| Morene Bank & Trust | UCC1 | Livestock | $74,675 | $74,675 | | | To be sold and net proceeds paid to bank. | | | | |
| Capital America | UCC2 | Gehl mower conditioner | $7,059 | $7,059 | | | Return in full. | | | | |
| Morene Bank & Trust | UCC3 | Farm machinery & equipment (to keep) | $25,700 | $25,700 | | | Annual | $6,101 | 6.00% | 5 | 01-Feb-11 |
| Morene Bank & Trust | UCC4 | Farm machinery & equipment (to be sold) | $10,150 | $10,150 | | | To be sold and net proceeds paid to bank. | | | | |
| IRS | P4 | Payroll taxes | $13,336 | | | | Annual | $3,166 | 6.00% | 5 | 01-Feb-11 |
| IL Dept of Revenue | P5 | Payroll taxes | $875 | | | | Annual | $208 | 6.00% | 5 | 01-Feb-11 |
| Unsec Preds | U1 | Unsecured creditors (estimated) | $655,541 | | | | Annual | $5,000 | 0.00% | 4 | 01-Feb-12 |

| | Year 1 | Years 2-5 |
|---|---|---|
| Total Annual Payments to Creditors | $37,589 | $42,589 |
| Chapter 12 Trustee's Fee @5% | $1,978 | $2,242 |
| Total Annual Plan Payments | $39,568 | $44,831 |

# SCHEDULE PS: PLAN SUMMARY (Page 2)
## Name: Lloyd A. Huls & Sheila L. Huls

ALL UNSECUREDS SHALL BE PAID AS FOLLOWS, IN FULL, OF THE OBLIGATION, WITHOUT DEFICIENCY:

| Creditor | | Total Unsecured Claim | Total Paid Under Plan | Annual Payment | Int. Rate | Amort. (Yrs.) | Date of Next Pmt. |
|---|---|---|---|---|---|---|---|
| L and M Plumbing, Inc. | U1 | $180 | $5 | $1 | 0.00% | 4 | 01-Feb-12 |
| Adams Telephone | U1 | $90 | $3 | $1 | 0.00% | 4 | 01-Feb-12 |
| ADM Alliance Nutrition, Inc. | U1 | $1,260 | $38 | $10 | 0.00% | 4 | 01-Feb-12 |
| Ameren CIPS | U1 | $146 | $4 | $1 | 0.00% | 4 | 01-Feb-12 |
| AT&T CCO | U1 | $97 | $3 | $1 | 0.00% | 4 | 01-Feb-12 |
| Baltzinger Home Supply | U1 | $448 | $14 | $3 | 0.00% | 4 | 01-Feb-12 |
| Blessing Hospital | U1 | $375 | $11 | $3 | 0.00% | 4 | 01-Feb-12 |
| Ridgeway | U1 | $90 | $3 | $1 | 0.00% | 4 | 01-Feb-12 |
| Capital One | U1 | $680 | $21 | $5 | 0.00% | 4 | 01-Feb-12 |
| Camps, Ancelet, Clark and Rasmussen | U1 | $536 | $16 | $4 | 0.00% | 4 | 01-Feb-12 |
| Carn Gro of Adrian, Inc. | U1 | $2,138 | $65 | $16 | 0.00% | 4 | 01-Feb-12 |
| City of Carthage | U1 | $63 | $2 | $0 | 0.00% | 4 | 01-Feb-12 |
| City of Chicago | U1 | $110 | $3 | $1 | 0.00% | 4 | 01-Feb-12 |
| Clinical Radiologists, SC | U1 | $27 | $1 | $0 | 0.00% | 4 | 01-Feb-12 |
| Columbia House | U1 | $104 | $3 | $1 | 0.00% | 4 | 01-Feb-12 |
| Credit Management Services | U1 | $10 | $0 | $1 | 0.00% | 4 | 01-Feb-12 |
| CPA Production Services | U1 | $13,312 | $406 | $102 | 0.00% | 4 | 01-Feb-12 |
| Dale Lybarger Oil Co. | U1 | $0 | $0 | $0 | 0.00% | 4 | 01-Feb-12 |
| ~McKenna, DVM | U1 | $411 | $13 | $3 | 0.00% | 4 | 01-Feb-12 |
| Dennis R. ~Coventon, DO | U1 | $44 | $1 | $0 | 0.00% | 4 | 01-Feb-12 |
| DHL Worldwide Express | U1 | $92 | $3 | $1 | 0.00% | 4 | 01-Feb-12 |
| Dr. L.L. ~Baldwin | U1 | $30 | $1 | $0 | 0.00% | 4 | 01-Feb-12 |
| Enderly Heating and Air Conditioning | U1 | $111 | $3 | $1 | 0.00% | 4 | 01-Feb-12 |
| EPH Service Co. | U1 | $36 | $1 | $0 | 0.00% | 4 | 01-Feb-12 |
| Farm Plan | U1 | $2,688 | $82 | $21 | 0.00% | 4 | 01-Feb-12 |
| Fashion Bug | U1 | $287 | $9 | $2 | 0.00% | 4 | 01-Feb-12 |
| Fort Madison Community Hospital | U1 | $889 | $27 | $7 | 0.00% | 4 | 01-Feb-12 |
| Frontier | U1 | $0 | $0 | $0 | 0.00% | 4 | 01-Feb-12 |
| George Keller & Sons | U1 | $23 | $1 | $0 | 0.00% | 4 | 01-Feb-12 |
| Graber Services, Ltd. | U1 | $2,126 | $65 | $16 | 0.00% | 4 | 01-Feb-12 |
| Great/PNC Bank Visa Card | U1 | $1,072 | $33 | $8 | 0.00% | 4 | 01-Feb-12 |
| Gobst Veterinary Services | U1 | $55 | $2 | $0 | 0.00% | 4 | 01-Feb-12 |
| Illinois Power Company | U1 | $1,427 | $44 | $11 | 0.00% | 4 | 01-Feb-12 |
| JC Penney | U1 | $1,037 | $32 | $8 | 0.00% | 4 | 01-Feb-12 |

| Creditor | Class | Amount | | | % | | Date |
|---|---|---|---|---|---|---|---|
| Jefferson Excavating | U1 | $235 | $7 | $2 | 0.00% | 4 | 01-Feb-12 |
| Kalona Organics | U1 | $14,250 | $435 | $109 | 0.00% | 4 | 01-Feb-12 |
| Keister's Inc. | U1 | $1,155 | $35 | $9 | 0.00% | 4 | 01-Feb-12 |
| Kempker Dairy Tech. | U1 | $544 | $17 | $4 | 0.00% | 4 | 01-Feb-12 |
| Keokuk Area Hospital | U1 | $150 | $5 | $1 | 0.00% | 4 | 01-Feb-12 |
| J-Roy -UIkes | U1 | $225 | $7 | $2 | 0.00% | 4 | 01-Feb-12 |
| Mac's Convenience Store | U1 | $300 | $9 | $2 | 0.00% | 4 | 01-Feb-12 |
| McClintock Service | U1 | $752 | $23 | $6 | 0.00% | 4 | 01-Feb-12 |
| Memorial Hospital | U1 | $586 | $18 | $1 | 0.00% | 4 | 01-Feb-12 |
| Memorial Hospital Medical Clinic | U1 | $145 | $4 | $1 | 0.00% | 4 | 01-Feb-12 |
| Merchants' Credit Guide Co. | U1 | $995 | $30 | $8 | 0.00% | 4 | 01-Feb-12 |
| Met-Speed Label | U1 | $1,281 | $39 | $10 | 0.00% | 4 | 01-Feb-12 |
| Mt. Sterling Vet Clinic | U1 | $81 | $2 | $1 | 0.00% | 4 | 01-Feb-12 |
| Midwest Family Medical Care | U1 | $126 | $4 | $1 | 0.00% | 4 | 01-Feb-12 |
| Moticor Gas | U1 | $1,287 | $39 | $10 | 0.00% | 4 | 01-Feb-12 |
| Mort Star Capital Acquisitions, LLC | U1 | $999 | $30 | $3 | 0.00% | 4 | 01-Feb-12 |
| Quincy Medical Group | U1 | $405 | $12 | $3 | 0.00% | 4 | 01-Feb-12 |
| Richond T. Huston, DVM | U1 | $66 | $2 | $1 | 0.00% | 4 | 01-Feb-12 |
| Skunk River Dairy Equipment | U1 | $1,178 | $36 | $9 | 0.00% | 4 | 01-Feb-12 |
| Swiss Dairy Supply | U1 | $588 | $18 | $4 | 0.00% | 4 | 01-Feb-12 |
| Phone Booth | U1 | $171 | $5 | $1 | 0.00% | 4 | 01-Feb-12 |
| Westmoreland Agency | U1 | $1,596 | $49 | $12 | 0.00% | 4 | 01-Feb-12 |
| Timothy J. --Wiewel, CPA | U1 | $2,338 | $71 | $18 | 0.00% | 4 | 01-Feb-12 |
| TMI Oil Co. | U1 | $188 | $6 | $1 | 0.00% | 4 | 01-Feb-12 |
| Travelers Indemnity Co. | U1 | $347 | $11 | $3 | 0.00% | 4 | 01-Feb-12 |
| Tri-State Medical Group | U1 | $169 | $5 | $1 | 0.00% | 4 | 01-Feb-12 |
| Weitpers Manufacturing | U1 | $220 | $7 | $2 | 0.00% | 4 | 01-Feb-12 |
| Verizon Wireless | U1 | $161 | $5 | $1 | 0.00% | 4 | 01-Feb-12 |
| Vander --Chatham | U1 | $17,200 | $525 | $131 | 0.00% | 4 | 01-Feb-12 |
| Vincent and Marilyn --Brinkschroeder | U1 | $105 | $3 | $105 | 0.00% | 4 | 01-Feb-12 |
| Western FBFM Association | U1 | $19,679 | $600 | $150 | 0.00% | 4 | 01-Feb-12 |
| Marine Trust | U1 | $621 | $19 | $5 | 0.00% | 4 | 01-Feb-12 |
| | | $557,405 | $17,006 | $4,251 | | | |
| **Total Class U1 Unsecureds** | | **$655,541** | **$20,000** | **$5,000** | | | |

# SCHEDULE CF: ESTIMATED ANNUAL CASH FLOW
## Name: Lloyd A. Huls & Sheila L. Huls

09-Aug-10
09:38:30 AM

**Income:**

| | |
|---|---|
| Corn | $6,916 |
| Beans | $96,000 |
| Wheat | $0 |
| FSA payments est | $0 |
| Federal crop ins. payment | $22,446 |
| Tony's off farm income (est.) | $15,000 |
| **Gross Income** | **$140,362** |

**Direct Operating Expenses:**

| | |
|---|---|
| Labor | $0 |
| Repairs and maintenance | $4,448 |
| Cash rent paid | $32,800 |
| Machinery leases | $0 |
| Feed purchased | $0 |
| Seeds and plants | $7,732 |
| Fertilizer and lime | $4,300 |
| Chemicals | $7,690 |
| Machine hire | $0 |
| Supplies | $0 |
| Livestock expense | $0 |
| Gas, fuel & oil | $928 |
| Storage and drying | $4,145 |
| Real estate taxes | $0 |
| Insurance | $2,100 |
| Utilities | $8,591 |
| Freight and trucking | $2,400 |
| Farm auto expense | $0 |
| Legal and accounting | $0 |
| Other farm expense | $220 |
| Feeder livestock purchases | $0 |
| Breeding stock purchases | $0 |
| Interest | $0 |
| **Total Operating Expense** | **$75,355** |

**Summary:**

| | |
|---|---|
| Gross Income | $140,362 |
| Operating Expense | ($75,355) |
| Gross Operating Profit | $65,007 |
| Net Operating Income | $65,007 |
| Family Living & Taxes (-) | ($25,000) |
| Available for Creditors | $40,007 |

| | |
|---|---|
| Total Acres | 14 |
| Yield Per Acre (bu.) | 130 |
| Total Yield (bu.) | 1,820 |
| Price Per Bushel ($) | $3.80 |
| Total Sales | $6,916 |

**Soybeans:**

| | |
|---|---|
| Total Acres | 240 |
| Yield Per Acre (bu.) | 40 |
| Total Yield (bu.) | 9,600 |
| Price Per Bushel ($) | $10.00 |
| Total Sales | $96,000 |

# SCHEDULE LA: PRO FORMA BALANCE SHEET AFTER REORGANIZATION
## Name: Lloyd A. Huls & Shelia L. Huls

09-Aug-10
09:38:30 AM

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash on Hand and in Bank (Estimated) | $1,000 | | |
| Tract 1 - residence @ Carthage, IL | $52,000 | Lloyd & Colleen Huls - Tract 1 - residence @ Carthage, IL | $52,000 |
| Tract 2 - 126 ac. & milking parlor | $226,800 | FSA - Tract 2 - 126 ac. & milking parlor | $194,130 |
| Tract 3 - Palmer Place - 47.6 ac. | $152,320 | Marine Bank & Trust - Tract 3 - Palmer Place - 47.6 ac. | $152,320 |
| Farm machinery & equipment (to keep) | $12,850 | Marine Bank & Trust - Farm machinery & equipment (to keep) | $12,850 |
| Household good & furnishings & other personal property | $950 | IRS - Payroll taxes | $13,336 |
| | | IL Dept. of Revenue - Payroll taxes | $875 |
| 2004 Dodge Ram 2500 | $5,450 | Unsecureds @100% | $655,541 |
| 1998 Jeep Grand Cherokee | $1,300 | Forgive | ($635,541) |
| | | Homestead exemption | $0 |
| | | General exemption | $8,000 |
| | | Tools of the trade | $3,000 |
| | | Motor vehicle exemption | $3,700 |
| | | Life insurance exemption | $0 |
| | | Retirement accounts | $0 |
| | | Total Liabilities | $460,211 |
| | | Net Worth | ($7,541) |
| Total Assets | $452,670 | Total Liabilities and Net Worth | $452,670 |

# SCHEDULE I.A (Page 2): ANALYSIS OF DIVIDEND IF CASE CONVERTED TO LIQUIDATION UNDER CHAPTER 7
## Name: Lloyd A. Huls & Sheila L. Huls

Remarks:

1. Assets which are entirely encumbered and therefore have no equity for unsecured creditors are excluded.

| ASSET | EQUITY |
|---|---|
| Cash on hand and in bank | $1,000 |
| Tract 2 - 126 ac. & milking parlor | $32,670 |
| 2004 Dodge Ram 2500 | $5,450 |
| 1998 Jeep Grand Cherokee | $1,300 |
| Household good & furnishings & other personal property | $950 |
| Exemptions | ($14,700) |
| Net equity | $26,670 |
| Trustee's fees and expenses of sale (est.@15%) | ($4,001) |
| IRS – Payroll taxes | ($13,336) |
| Dept. of Revenue - Payroll taxes | ($875) |
| Net liquidating dividend under Chapter 7 | $8,459 |
| Total unsecured creditors (From schedule 1) | $655,541 |
| Percentage distribution under Chapter 7 | 1.29% |
| Percentage distribution to Class U1 Claims per Plan | 3.05% |

NET PRESENT VALUE OF PAYMENTS TO UNSECUREDS

| Year | Amount |
|---|---|
| 2010 | $0 |
| 2011 | $0 |
| 2012 | $5,000 |
| 2013 | $5,000 |
| 2014 | $5,000 |
| 2015 | $5,000 |
| 2016 | $0 |
| 2017 | $0 |
| 2018 | $0 |
| 2019 | $0 |
| 2020 | $0 |
| 2021 | $0 |
| 2022 | $0 |
| 2023 | $0 |
| 2024 | $0 |
| Total unsecured distribution | $20,000 |

# SCHEDULE TR: SUMMARY OF PRIOR TAX RETURNS
## Name: Lloyd A. Huls & Sheila L. Huls

09-Aug-10
09:31:25 AM

| Year | Gross Farm Income Before Dep'n Sch. F | Expense Before Dep'n Sch. F | Depreciation | Net Cash Flow (Computed) | Net Income Schedule F | Adjusted Gross Income From All Sources Form 1040 | Net Operating Loss Carryforward |
|------|------|------|------|------|------|------|------|
| ===== | ============= | ============ | ============ | ============ | ============ | ============ | ============ |
| 2007 | $190,431 | $190,157 | $53,765 | $274 | ($53,491) | ($103,671) | ($61,029) |
| 2008 | $225,180 | $207,342 | $57,549 | $17,838 | ($39,711) | ($129,468) | ($103,671) |
| 2009 | $241,767 | $195,004 | $54,163 | $46,763 | ($7,400) | ($126,238) | ($127,968) |
| | | | ============ | ============ | ============ | ============ | ============ |

debtors' books and records and tax returns are available for inspection by interested parties.

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| IN RE<br><br>LLOYD ANTHONY HULS and<br>SHEILA LORRAINE HULS<br><br>Debtors | Chapter 12<br>No. 10-81533 |

## SCHEDULE OS
## OPERATIONAL SUMMARY

### 1.00.  INTRODUCTION.

1.      Debtors have been engaged in a mixed grain and livestock operation since 1997.

2.      Lloyd Anthony Huls (age 41) and Sheila L. Huls (age 39) are the operators of the farm.  They will continue to operate and manage the reorganized entity.

3.      Debtors were operating a dairy farm but are liquidating that and intend to continue a mixed grain and livestock operation, without dairy.

### 2.00.  FARMS.

1.      The debtors own 173 acres in Hancock County, Illinois.  They lease an additional 240.37 acres on a cash-rent basis.

### 4.00.  LITIGATION.

1.      Pending Pre-Petition Litigation.  All pre-petition litigation was stayed by the automatic stay, 11 USC §362.  The pre-petition litigation is described as follows:

       a.      West Central FS, Inc. v. Tony Huls, d/b/a Huls Dairy, collection suit filed in McDonough County, Illinois, Case No. 09-LM-103.  Judgment entered 8/27/09.

       b.      Crop Production Services v. Tony Huls, d/b/a Huls Dairy, collection suit filed in Hancock County, Illinois, Case No. 10-LM-7.  Stayed upon filing bankruptcy.

       c.      Chem Gro of Adrian, Inc. v. Tony Huls, collection suit filed in Hancock County, Illinois, Case No. 10-SC-113.  Stayed upon filing bankruptcy.

2.      Pending Post-Petition Litigation:

       a.      None.